UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHAMILAH N. MARQUEZ,

                        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Case # 17-CV-6747-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Shamilah N. Marquez brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 12. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On January 17, 2014, Marquez protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 172-80. She alleged disability since September 13, 2013 due to neck pain, arthritis, depression, anxiety, and mood swings. Tr. 214. On May 9, 2016, Marquez and a vocational expert ("VE") appeared and testified at a hearing before Administrative

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

Law Judge Marie Greener ("the ALJ"). Tr. 32-60. On June 14, 2016, the ALJ issued a decision finding that Marquez was not disabled within the meaning of the Act. Tr. 11-27. On September 1, 2017, the Appeals Council denied Marquez's request for review. Tr. 1-6. Thereafter, Marquez commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.     District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.    Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Marquez's claim for benefits under the process described above. At step one, the ALJ found that Marquez had not engaged in substantial gainful activity since the alleged onset date of September 13, 2013. Tr. 15. At step two, the ALJ found that, from September 13, 2013 through December 31, 2014, Marquez had the following severe impairments: gastric bypass surgery with complications, arthropathy, degenerative disc disease of the cervical spine, obstructive sleep apnea, depression, and anxiety. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 15-18.

Next, the ALJ determined that, from September 13, 2013 through December 31, 2014, Marquez retained the RFC to perform sedentary work[2] in a low stress environment where she could have unscheduled absences for days to weeks for inpatient hospitalizations totaling more than six weeks in a 12-month period. Tr. 18-19. At steps four and five, the ALJ found that Marquez could not perform her past relevant work or other jobs in the national economy. Tr. 19-20. Accordingly, the ALJ concluded that Marquez was disabled under the Act from September 13, 2013 through December 31, 2014. Tr. 21.

Next, the ALJ indicated that one of Marquez's severe impairments—gastric bypass surgery with complications—improved as of January 1, 2015, but that her other impairments remained severe. Tr. 21. The ALJ found that, as of January 1, 2015, those impairments, alone or in combination, do not meet or medically equal any Listings impairment. Tr. 21-23.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

The ALJ determined that Marquez experienced medical improvement that increased her RFC as of January 1, 2015. Tr. 23. Specifically, the ALJ found that Marquez retains the RFC to perform light work[3] with additional limitations—she cannot work in conjunction with others, should work predominately with objects rather than people, and requires a low stress environment, *i.e.*, one that requires only routine daily tasks and duties in the same workplace that do not significantly change in pace or location on a daily basis. Tr. 23-25. At step four, the ALJ found that this RFC does not prevent Marquez from performing her past relevant work as a document preparer. Tr. 26. Accordingly, the ALJ concluded that Marquez's disability ended on January 1, 2015 and that she was no longer disabled under the Act. *Id.*

## II. Analysis

Marquez argues that remand is required because the ALJ violated the treating physician rule.[4] ECF No. 9-1 at 12-16; ECF No. 13 at 1-3. Specifically, Marquez asserts that the ALJ improperly discounted the opinion of her treating physician Zhong Guo, M.D. *Id.* The Court agrees.

### A. Treating Physician Rule

The treating physician rule instructs the ALJ to give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] Marquez advances another argument that she believes requires reversal of the Commissioner's decision. ECF No. 9-1 at 17-18; ECF No. 13 at 3-4. The Court will not reach that argument because it remands based on the ALJ's violation of the treating physician rule.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

When a treating physician's opinion is not given controlling weight, the ALJ must consider the following factors in determining how much weight it should receive: "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### B. Dr. Guo's Opinion

On April 29, 2016, Dr. Guo completed a Physical and Mental Medical Source Statement. Tr. 914-18. Dr. Guo indicated that he had been seeing Marquez three to five times a year for three years and that her diagnoses were cervical radiculopathy, anxiety, and depression. Tr. 914. He opined that Marquez cannot work full-time due to radiating neck pain that affects her ability to write and use her arm; her frequent need to adjust positions to relieve pain; and her uncontrolled anxiety that causes conflicts at work. *Id.* Dr. Guo noted that Marquez's impairments have lasted or can be expected to last at least 12 months. *Id.*

Dr. Guo opined that Marquez cannot complete a normal workday and workweek without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 915-16. He also opined that Marquez has significant limitations in her ability to sustain concentration, remember work procedures, interact socially, and adapt to workplace changes. Tr. 916.

Dr. Guo opined that Marquez can sit for ten minutes and stand for five minutes at one time before she needs to change positions and that she can sit, stand, and walk less than two hours total in an eight-hour workday. Tr. 917. Dr. Guo also indicated that the combination of Marquez's physical and mental limitations would cause her to be off task more than 30% of an eight-hour workday. *Id.*

### C. Failure to Provide Good Reasons

The ALJ summarized Dr. Guo's opinion and afforded it "little weight" because she found Dr. Guo's assessed limitations inconsistent with Marquez's daily activities, namely, "vacationing in Florida and Puerto Rico." Tr. 19 (citing Tr. 768, 771). The ALJ offered no other reason for discounting Dr. Guo's opinion and did not analyze any of the factors set forth above.

It is unclear how Marquez's ability to vacation in Florida and Puerto Rico refute Dr. Guo's assessed limitations as to sitting, standing, walking, and performing mental work functions. In fact, the treatment record that mentions Marquez's trip to Florida indicates that she had "bad pain" and went to the hospital on the second day of her trip. Tr. 768. The treatment record that mentions her trip to Puerto Rico merely states that she traveled there and "had a nice time." Tr. 771. There is no indication that Marquez performed activities on these trips equivalent to those she would need to perform on a regular and continuous basis in a full-time work setting. *See* S.S.R. 96-8, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("RFC is an assessment of an individual's ability to

7

do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

Another portion of the ALJ's decision further discusses Marquez's daily activities like cleaning around the house, attending appointments and school, securing an apartment, working part-time, and "seeing a former boyfriend," but the ALJ does not explain how these activities refute Dr. Guo's assessed limitations or support the RFC assessment for light work—she merely concludes, without discussing any of the relevant functions,[5] that Marquez "is more active than alleged and is in fact capable of performing work at the light exertional level." Tr. 24. But "the ability to perform basic activities of self-care . . . do not by themselves contradict allegations of disability," *Miller v. Colvin*, 122 F. Supp. 3d 23, 29 (W.D.N.Y. 2015) (citation and quotation marks omitted), and the Second Circuit has "stated on numerous occasions" that the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted).

The ALJ's complete rejection of Dr. Guo's treating opinion because Marquez can perform certain daily activities, without more, does not provide Marquez or the Court with a good reason for discounting Dr. Guo's opinion. Accordingly, the Court finds that the ALJ improperly discounted Dr. Guo's opinion.

The ALJ's error is compounded by the fact that Dr. Guo's opinion was the only assessment as to Marquez's physical ability to work after January 1, 2015—the date that the ALJ found Marquez no longer disabled. When the ALJ assessed Marquez's RFC as of January 1, 2015, she

---

[5] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." S.S.R. 96-8, 1996 WL 374184, at *1.

did not mention Dr. Guo's opinion. Tr. 25. The ALJ further indicated that the record contained opinions as to Marquez's functioning before January 1, 2015, but she specifically noted that those opinions were "not considered . . . as they are inapplicable." *Id.* Even if the ALJ properly rejected Dr. Guo's opinion, she created a gap in the record when she rejected the only opinion as to Marquez's physical functional capacity after January 1, 2015. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (noting that the ALJ's proper rejection of the treating physician's opinion created a "significant and obvious gap in the evidentiary record" because "the record contained no competent medical opinion regarding Plaintiff's RFC during the relevant time period") (emphasis in original).

When an ALJ does not rely on a medical opinion to formulate the RFC, she must "provide a function-by-function analysis of [the claimant]'s work-related capacity." *Ford v. Colvin*, No. 12-CV-301A, 2013 WL 4718615, at *8 (W.D.N.Y. Sept. 3, 2013). The ALJ provided no such analysis here. She cites three medical records that allegedly support her RFC finding as of January 1, 2015, but she does not tie those records to the demands of light work and none of those records illuminate how Marquez's impairments affect her functional capacity. Tr. 25 (citing 664, 826, 842); *see Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (Even though the Commissioner is empowered to make the RFC determination, "where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the Commissioner "may not make the connection" herself.). Interestingly, even though the ALJ rejected several medical opinions because they were rendered before January 1, 2015, the medical records that she cites in support of her RFC determination for that time period all pre-date January 1, 2015. *See* Tr. 664, 826, 842.

9

The Commissioner offers several reasons why Dr. Guo's opinion should be rejected, including that it is unsupported by the record and his contemporaneous treatment notes. ECF No. 12-1 at 14-17. The ALJ, however, did not offer any of these reasons, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted). Marquez is entitled to a proper analysis of Dr. Guo's opinion and, if appropriate, good reasons why it must be rejected. Accordingly, the Court remands this matter for further administrative proceedings.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 28, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court